**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Mark Miller, *et al.*,

    Plaintiff,

    v.                                      Case No. 1:08cv550

City of Cincinnati, *et al.*,                Judge Michael R. Barrett

    Defendants.

## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2) Defendants have filed a Memorandum in Opposition. (Doc. 3) Also before the Court is Defendants' Motion to Dismiss. (Doc. 3) The Court held a hearing on this matter on August 18, 2008.

Plaintiffs seek to enjoin the enforcement of an allegedly unconstitutional policy, practice and custom of Defendants which prohibits Plaintiffs from holding a press conference and political rally in the lobby and stairs inside City Hall. Plaintiffs claim Defendants' policy, practice and custom violates their First Amendment right to freedom of speech, as well as their right to equal protection and due process under the 14th Amendment.

Defendants argue that Plaintiffs' claims should be dismissed because (1) Plaintiffs' claims are not ripe; (2) Plaintiffs lack standing; and (3) Plaintiffs' claims fail for failure to state a claim.

I.  **BACKGROUND**

Plaintiffs are an individual and two organizations who oppose the authority of the City Council to implement a red light enforcement procedure using cameras. (Doc. 1, ¶¶2-4) Plaintiffs began an initiative petition effort seeking to amend the Charter of the City of Cincinnati to prohibit the enforcement of traffic laws through automated photo-monitoring devices. (Id., ¶ 26)

On April 28, 2008, Plaintiffs submitted a letter to Defendant Milton Dohoney, the City Manager of the City of Cincinnati. (Id., ¶19 & Ex. C) Plaintiffs requested the use of the lobby and stairs inside City Hall for a press conference and rally. (Id.) This location was previously used for a rally on February 27, 2008 by the supporters of a tax levy for the Cincinnati Public Schools. (Id., ¶14) The supporters of the school levy included four City Council members. (Id., Ex. A)

In a letter dated April 29, 2008, Defendant Joel Koopman, employed in the City's Division of Facility Management, responded to Plaintiffs' request. (Doc. 1, Ex. D) Koopman stated that Administrative Regulation #5 governs the use of all City buildings, offices and City workplaces. (Id.) This Regulation provides, in relevant part:

> No private business enterprises or solicitations should be permitted in City buildings or operated therefrom. Exceptions should be made only by specific approval of the Department Head when it is judged to be in the public interest, as in the case, for example, of the United Way Campaign.
>
> . . .
>
> In making any exceptions to the above policies, Department Heads are urged to consider not only what is proper, but also how it appears to the public.

(Id.) Koopman explained that the intent of Administrative Regulation #5 is that "the use of

any City facility is for conducting business related to the functions of our various departments in serving the citizens and by City Council in the performance of their duties." (Id.) Koopman also explained that: "City Facility Management's practice is that events held inside the building require a City sponsor, either a Council Member or a department as part of their regular business and duties." (Id.) Koopman closed by stating: "Should you contact one of the City departments or one of the Council Members and find agreement to sponsor this press conference and rally inside City Hall, we will gladly work with them to make this happen." (Id.) Instead of conducting the press conference and rally inside, Plaintiffs held this earlier event outside of City Hall. (Id., ¶ 21)

On June 9, 2008, a coalition, including City Council Member Chris Monzel and a private organization, Citizens for Community Values ("CCV"), held a press conference in a large conference room inside City Hall. (Id., ¶22 & Ex. E) At the conference, the coalition called upon a local weekly newspaper to stop publishing advertisements for adult businesses. (Id., ¶23)

On July 17, 2008, Plaintiffs submitted a second request to the City seeking use of the lobby and stairs inside City Hall for a second rally and press conference. (Id., ¶25 & Ex. F) Plaintiffs' request explains that the purposes of the rally and press conference would be to announce the results of the red light camera petition effort. (Id.) Koopman again responded by explaining that "[e]vents that do not have sponsorship from a City Department, the City Manager, a Council Member or the Mayor are welcome to use the exterior stairs since it is a public plaza. . . . If you should acquire sponsorship from one of the above parties, please inform us so arrangements can be made for use of the interior steps" (Id., Ex. G)

Plaintiffs claim Defendants have discriminated by allowing some individuals or groups access to public property in order to engage in the exercise of political speech, while, at the same time, denying such access to others. Plaintiffs also claim that Defendants have imposed an unconstitutional prior restraint upon their exercise of freedom of speech by requiring, without any criteria, prior approval or sponsorship of a City official before any fora inside of City Hall will be made available for the exercise of one's speech. Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

## II. ANALYSIS

### A. Motion to Dismiss

Defendants argue that this Court lacks jurisdiction because Plaintiffs' claims are not ripe and Plaintiffs lack standing. Federal Rule of Civil Procedure 12(h)(3) instructs this Court to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Defendants also argue pursuant to Federal Rule of Civil Procedure 12(b)(6) that Plaintiffs have failed to state a claim.

#### 1. Standing

Standing is a jurisdictional matter and is a threshold question to be resolved by the court before a court may address any substantive issues. *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). To establish standing, a plaintiff must show: (1) that he or she suffered an injury in fact, which is both concrete and actual or imminent; (2) that the injury is caused by the defendant's conduct; and (3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In addition, "[p]rudential limitations

dictate that 'the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 403 (6th Cir. 1999), *quoting Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir. 1991).

Defendants argue that Plaintiffs have not suffered an injury in fact because they have not sought a City sponsor for their press conference and rally.

In the context of the First Amendment, the Supreme Court has explained: "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602, 608 (6th Cir. 2008), *quoting Laird v. Tatum*, 408 U.S. 1, 13-14, (1972). Here, Plaintiffs have claimed a specific present objective harm based on Defendants' denial of their request to hold their press conference and rally inside the lobby and stairs of City Hall.[1]

In addition, Plaintiffs explain that their claim is a facial challenge to the City's Administrative Regulation #5, based upon the unbridled discretion given to City officials. The Supreme Court has long held that "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750,

---

[1] At the preliminary injunction hearing, Defendants presented evidence that the underlying reason for Plaintiffs' petition drive–the red light camera proposal–has been obviated by City Council's failure to pass the measure. (Defendants Hearing Ex. 1) The Court notes that regardless of the status of the red light camera proposal, Plaintiffs' constitutional claims remain because the claims are based upon the denial of Plaintiffs' request to use of the inside of City Hall.

755-56 (1988). Here, Administrative Regulation #5 permits City Department Heads and City Council Members unbridled discretion in determining who is permitted to conduct events inside City Hall. As such, a facial challenge is appropriate.

Based on the foregoing, the Court finds that Plaintiffs have standing to bring their claims against Defendants.

### 2. Ripeness

To determine whether a claim is ripe, this Court must consider (1) the likelihood that the injury alleged by the plaintiff will ever occur; (2) whether the factual record is sufficiently developed to allow for adjudication; and (3) the hardship to the parties from refusing consideration. *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). However, this ripeness analysis "is somewhat relaxed in the First Amendment context." *Lawrence v. Welch*, 531 F.3d 364, 374 (6th Cir. 2008), *quoting Norton*, 298 F.3d at 554; *see also Currence v. City of Cincinnati*, 2002 WL 104778, *3 (6th Cir. Jan. 24, 2002) (unpublished) ("Ripeness analysis is relaxed for the First Amendment cases involving a facial challenge to a regulation because courts see a need to prevent the chilling of expressive activity."), *citing Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995).

Plaintiff has shown that it is likely that the alleged injury will occur because Defendants have previously denied their request to use the lobby and stairs inside City Hall. Next, the factual record is sufficiently developed to allow for adjudication. Even though Defendants argue that Plaintiffs have not been denied an opportunity to hold their event inside because they have not sought a City sponsor, this case turns on issues of law. *See Currence*, 2002 WL 104778, at *3. The central dispute is whether the Administrative Regulation #5 and Defendants' interpretation of the Regulation violates the First

Amendment. Finally, it is clear that if this Court refuses consideration, Plaintiffs will not know if they will be permitted to hold their event planned for August 20, 2008 inside City Hall, thereby creating an undue hardship. Therefore, the Court concludes that Plaintiffs' claims are ripe for adjudication.

### 3. Failure to state a claim

In reviewing a motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), *quoting Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct 1955, 1965 (2007).

Defendants argue that Plaintiffs' claims should be dismissed because contrary to the false and overbroad allegations in Plaintiffs' Complaint, Defendants have not generally opened the lobby stairs of City Hall for events by private individuals and groups.

While Defendants may dispute the nature of the two events identified by Plaintiffs–the tax levy event and the CCV event–Defendants do not dispute that these events occurred. Moreover, this Court may not grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. *Id.* at 1969 n. 8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.")

Based on the foregoing, the Court DENIES Defendants' Motion to Dismiss.

### B.     Preliminary injunctive relief standard

Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy whose purpose is to preserve the *status quo*. In when determining whether to grant or deny a temporary restraining order or a preliminary injunction, this Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Chabad of S. Oh. & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004), *quoting Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir. 1997). In First Amendment cases, the first factor will often be determinative. *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001), *citing Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

### C.     Section 1983

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001), *citing Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998) *and United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir.1992). There appears to be no dispute that Plaintiffs have shown state action. Instead, Defendants

argue Plaintiffs have not made an adequate showing of a constitutional violation.

### D. First Amendment

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. amend. I. The First Amendment, however, does not guarantee that all forms of protected speech may be heard on property owned or controlled by the government. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Instead, "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.*

To determine whether the government has violated an individual's free speech rights, the Sixth Circuit employs a three-step analysis: (1) we ask whether the speech is protected under the First Amendment; (2) if so, using the public-forum doctrine, we ascertain whether the applicable forum is public or nonpublic; and (3) applying the appropriate standard for the forum, we ask whether the government's prohibition on speech passes muster under the First Amendment. *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 559 (6th Cir. 2007).

#### 1. Protected speech

The parties appear to have no dispute as to whether the proposed speech–a press conference and rally–is protected under the First Amendment.

#### 2. Nature of the forum

There are three types of public fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Jobe v. City of Catlettsburg*, 409 F.3d 261, 266 (6th Cir. 2005), *citing Cornelius v. NAACP Legal Defense & Educ. Fund,*

*Inc.*, 473 U.S. 788, 802 (1985). "A traditional public forum is a place 'which by long tradition or by government fiat has been devoted to assembly and debate,' such as a street or a park." *Kincaid v. Gibson*, 236 F.3d 342, 348 (6th Cir. 2001), *quoting Perry*, 460 U.S. at 45. The second type of forum has been alternatively described as a "limited public forum," and as a "designated public forum." *Id.* (citations omitted). The government may open a limited public forum "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Id.*, *citing Cornelius*, 473 U.S. at 802. Where there is a nonpublic forum, the government may control access "based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Id.*, *citing Cornelius*, 473 U.S. at 806; *Perry*, 460 U.S. at 46.

Plaintiffs argue that Defendants have created a designated public forum in the lobby and stairs inside City Hall. Defendants argue that this area is a nonpublic forum.

When determining the nature of the forum, the "touchstone of [a court's] analysis is whether the government intended to open the forum at issue." *Kincaid.* 236 F.3d at 348-49 (citations omitted). "To determine whether the government intended to create a limited public forum, we look to the government's policy and practice with respect to the forum, as well as to the nature of the property at issue and its 'compatibility with expressive activity.'" *Id.*, *quoting Cornelius*, 473 U.S. at 802.

There is no clear evidence that Defendants intended to designate the stairs and lobby inside City Hall as a public forum. Administrative Regulation #5 itself makes no mention of expressive activity, but rather provides that exceptions to the prohibition on "private business enterprises or solicitations" in City buildings should be made by "specific

approval of the Department Head when it is judged to be in the public interest." According to the Regulation, such an exception would be the United Way Campaign. In denying Plaintiffs' first request, Defendants stated that "[t]he intent of Administrative Regulation #5 is that use of any City facility is for conducting business related to the functions of [the City's] various departments in serving the citizens and by City Council in the performance of their duties."

Plaintiffs point to the two events held within City Hall–the tax levy event and the CCV event–as evidence that Defendants intended to designate the lobby and stairs inside City Hall as a public forum. However, "[a] designated public forum is not created when the government allows selective access for individual speakers rather than general access for a class of speakers." *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 679 (1998). The Supreme Court has illustrated the difference through its own precedents:

> In *Widmar [v. Vincent,* 454 U.S. 263 (1981)], for example, a state university created a public forum for registered student groups by implementing a policy that expressly made its meeting facilities "generally open" to such groups. . . .
>
> In *Perry*, . . . the Court held a school district's internal mail system was not a designated public forum even though selected speakers were able to gain access to it. The basis for the holding in *Perry* was explained by the Court in *Cornelius*:
>
>> "In contrast to the general access policy in *Widmar*, school board policy did not grant general access to the school mail system. The practice was to require permission from the individual school principal before access to the system to communicate with teachers was granted."
>
> And in *Cornelius* itself, the Court held the Combined Federal Campaign (CFC) charity drive was not a designated public forum because "[t]he Government's consistent policy ha[d] been to limit participation in the CFC to 'appropriate' [ *i.e.*, charitable rather than political] voluntary agencies and to require agencies seeking admission to obtain permission from federal and local Campaign officials."


*Id.* at 678-79 (citations omitted). The Supreme Court explained further:

> On one hand, the government creates a designated public forum when it makes its property generally available to a certain class of speakers, as the university made its facilities generally available to student groups in *Widmar*. On the other hand, the government does not create a designated public forum when it does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, "obtain permission," to use it. For instance, the Federal Government did not create a designated public forum in *Cornelius* when it reserved eligibility for participation in the CFC drive to charitable agencies, and then made individual, non-ministerial judgments as to which of the eligible agencies would participate.

*Id.* at 679 (citations omitted).

Defendants have not granted general access to the inside of City Hall to a class of speakers. Instead, as Administrative Regulation #5 and Defendants' interpretation of the Regulation demonstrate, Defendants have only made selective access available to individual speakers. As such, Defendants have done "no more than reserve eligibility for access to the forum." In addition, permission for an event inside City Hall must be granted from a City sponsor. That some expressive activity occurred within the context of the forum created "does not imply that the forum thereby [became] a public forum for First Amendment purposes." *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 750 (6th Cir. 2004), *quoting Cornelius*, 473 U.S. at 805.

Moreover, in cases where the principal function of the property would be disrupted by expressive activity, the Supreme Court has been particularly reluctant to hold that the government intended to designate a public forum. *Cornelius*, 473 U.S. at 804. Here, the principal function of the lobby and stairs inside City Hall is to serve as an entrance to the building. At the preliminary injunction hearing, the parties agreed that the lobby and the stairs at the Plum Street entrance where Plaintiffs seek to hold their event is the main

entrance to the building since all other entrances remain closed. A press conference and rally of any size would certainly disrupt the egress and ingress of traffic into City Hall. Accordingly, the Court finds that the lobby and the stairs inside City Hall are a nonpublic forum.

The Court acknowledges that "[n]umerous cases have held that the United States Capitol, as well as state capitols, are proper fora for demonstrations." *Pouillon v. City of Owosso*, 206 F.3d 711, 717 (6th Cir. 2000), *citing Pinette v. Capitol Square Review and Advisory Bd.*, 30 F.3d 675 (6th Cir.1994) (holding public square across from Ohio capitol building a public forum); *Shiel v. United States*, 515 A.2d 405 (D.C.Ct.App. 1986) (holding the Capitol Rotunda might be closed early prior to President's address there, but must be available to protestors during normal hours when open), *cert. denied*, 485 U.S. 1010 (1988); *Gaylor v. Thompson*, 939 F.Supp. 1363 (W.D.Wis. 1996) (Wisconsin state capitol rotunda a public forum, based on its traditional open use); *ACT-UP v. Walp*, 755 F.Supp. 1281 (M.D.Pa. 1991) (similarly, Pennsylvania capitol rotunda); *Chabad-Lubavitch of Georgia v. Harris*, 752 F.Supp. 1063 (N.D.Ga. 1990) (plaza in front of Georgia state capitol a public forum by designation). However, "[i]n most of these cases, the issue is decided by reference to the history of the building's use." 206 F.3d at 717. While there is evidence in the record that Defendants have traditionally made the areas *outside* City Hall generally available for expressive activity, there is no history of using the inside of the building for such events. Therefore, the Court finds the above cases inopposite.

### 3. Applicable standard for the forum

"The government may lawfully restrict speech in a nonpublic forum so long as the restrictions are viewpoint neutral and reasonable in light of the purpose served by the

forum." *Helms v. Zubaty*, 495 F.3d 252, 257-58 (6th Cir. 2007), *citing City of Sidney*, 364 F.3d at 746. Defendants' restrictions–found in Administrative Regulation #5 and the interpretation of that Regulation–are viewpoint neutral. The only limitation is that the use of City facilities be limited to "conducting business related to the functions of [the City's] various departments in serving the citizens and by City Council in the performance of their duties."[2] This limitation makes no reference to viewpoint. While Plaintiffs argue that the effect of the Regulation is to discourage their viewpoint, the Supreme Court has explained that

> Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves.

*Perry*, 460 U.S. at 49.

Furthermore, the Court finds that it reasonable to limit access to the interior of City Hall to those activities which relate to the functions of the City and the performance of City Council's duties. Opening City Hall to all manner of events would disrupt the business of City Hall. *See Cornelius*, 473 U.S. at 811 ("The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose.").

---

[2] Plaintiffs point out that Article XIII, Section 3 of the City Charter prohibits the City from weighing in on the "passage or defeat of any ballot issue;" and therefore by definition, the rally promoting the tax levy cannot be business related to the functions of the City's departments or the performance of City Council's duties. However, Plaintiffs are not seeking to enjoin Defendants from activity which they deem violative of the City's policies, but are instead seeking an injunction against allegedly unconstitutional policy being applied to them.

Therefore, the Court concludes that Plaintiffs have not shown a likelihood of success on the merits of their First Amendment claim.

### E.  Equal Protection

"The Equal Protection Clause prohibits states from making distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007), *citing Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir. 2007) (internal quotation marks omitted).  The First Amendment right to free speech is such a fundamental right.  *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 101 & n. 8 (1972).  However, where a plaintiff does not have a First Amendment right, there is no fundamental right based upon the freedom of speech.  *See Perry*, 460 U.S. at 54 (holding that because plaintiff did not have a First Amendment or other right of access to the interschool mail system, the grant of such access to another organization does not burden a fundamental right).

In the absence of a fundamental right, Plaintiffs' claim is subject to rational basis review.  Under this test, a government action is considered irrational only if it is "unrelated to the achievement of any combination of the legitimate purposes." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005).  The Court finds that the restrictions on the use of City Hall which result from Administrative Regulation #5 and the interpretation of that Regulation are rationally related to Defendants' legitimate purpose of "conducting business related to the functions of [the City's] various departments in serving the citizens and by City Council in the performance of their duties."  It is rational for Defendants to exclude certain activities which interfere with business of the City or the work of City Council.

Therefore, the Court finds that the Plaintiffs have not shown a likelihood of success on the merits of their equal protection claim.

### F. Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs' due process claim is based upon vagueness and overbreadth doctrines. Plaintiffs argue that Administrative Regulation #5 lacks objective standards for deciding what speech is permitted inside City Hall.

Imprecise laws can be attacked on their face under two different doctrines. *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999). First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when "judged in relation to the statute's plainly legitimate sweep." *Id.*, *quoting Broadrick v. Oklahoma*, 413 U.S. 601, 612-615 (1973). Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests. *Id.*, *citing Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

The overbreadth doctrine is "an exception to traditional rules of standing and is applicable only in First Amendment cases in order to ensure that an overbroad statute does not act to 'chill' the exercise of rights guaranteed protection." *Leonardson v. City of East Lansing*, 896 F.2d 190, 195 (6th Cir. 1990), *citing NAACP v. Button*, 371 U.S. 415, 433 (1963). "Facial challenges to overly broad statutes are allowed not primarily for the

benefit of the litigant, but for the benefit of society-to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984). Therefore, "[i]n order for a statute to be found unconstitutional on its face on overbreadth grounds, 'there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court.' " *Leonardson*, 896 F.2d at 195, *quoting City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). Plaintiffs have not identified any realistic danger that City Administrative Regulation #5 will significantly compromise the First Amendment rights of parties not before the Court. As such, the Court finds that Plaintiffs have not shown a likelihood of success on the merits of this claim. *Accord Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (explaining that the overbreadth doctrine is "strong medicine" that is used "sparingly and only as a last resort.").

Under the First Amendment, speakers are protected from arbitrary and discriminatory enforcement of vague standards. *National Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998). Due process requires that this Court hold a statute, ordinance, or resolution void for vagueness "if its prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Auth.*, 163 F.3d 341, 358-59 (6th Cir. 1998). In addition, "[t]he absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors." *Id.* at 359. As the Sixth Circuit has explained:

Quite simply, the danger of censorship and of abridgment of our precious

> First Amendment freedoms is too great where officials have unbridled discretion over a forum's use." *Id., citing Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). We will not presume that the public official responsible for administering a legislative policy will act in good faith and respect a speaker's First Amendment rights; rather, the vagueness "doctrine requires that the limits the [government] claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).

*Id.*

The Court finds that the Administrative Regulation #5 suffers from vagueness. First, its prohibitive terms are not clearly defined. There is no guidance as to what constitutes being "in the public interest," save the lone example of "the United Way Campaign." Second, there are no clear standards which would guide a City official to enforce the Regulation. The Regulation merely "urges" Department Heads "to consider not only what is proper, but also how it appears to the public." While Defendants informed Plaintiffs what the intent of the Regulation is in their April 29, 2008 letter, there are no standards in the Regulation itself, nor is there binding judicial or administrative construction of the Regulation. As such, the Court finds that Plaintiffs are likely to succeed on the merits of their due process claim based upon the doctrine of vagueness.

The Court also finds that the remaining preliminary injunction factors weigh in favor of Plaintiffs. "The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989). Additionally, if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment. *Deja Vu*, 274 F.3d at 400. Moreover, "it is always in the public interest to prevent violation of a party's

constitutional rights." *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), *quoting G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). Therefore, the Court concludes that Plaintiffs are entitled to injunctive relief enjoining the application of Administrative Regulation #5. While Plaintiffs seek an injunction which would permit them to conduct their press conference and rally on August 20, 2008 in the lobby and stairs inside City Hall, the Court finds that this remedy is not appropriate based upon the foregoing analysis. The harm identified by Plaintiffs' remaining claim–a due process violation based upon vagueness–is the unbridled discretion Defendants have over the use of the lobby and stairs inside City Hall. The injunctive relief shall be limited accordingly. Therefore, the Court enjoins Defendants from applying Administrative Regulation #5 to requests for use of the lobby and stairs inside City Hall. It is further ordered that no sponsored or unsponsored activities shall take place in the lobby and stairs inside City Hall except for routine ingress and egress during the pendency of the Temporary Restraining Order.

### III.     CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction is **DENIED in PART and GRANTED in PART** (Doc. 2);

    a. Plaintiffs' Motion is DENIED to the extent that it seeks to enjoin Defendants based upon a violation of Plaintiffs' freedom of speech, equal protection rights or a violation of Plaintiffs' due process rights based upon the doctrine of overbreadth;

    b. Plaintiffs' Motion is GRANTED to the extent that it seeks to enjoin Defendants from applying Administrative Regulation #5, which the Court has determined violates Plaintiffs' due process rights based upon vagueness;

    c.     Accordingly, Defendants are hereby enjoined for a period of **10 (ten) days** from applying Administrative Regulation #5 to requests for use of the lobby and stairs inside City Hall;

    d.     It is further ordered that no sponsored or unsponsored activities shall take place in the lobby and stairs inside City Hall except for routine ingress and egress during the pendency of the Temporary Restraining Order; and

2.     Defendants' Motion to Dismiss (Doc. 3) is **DENIED**.

**IT IS SO ORDERED.**

                                                  */s/ Michael R. Barrett*
                                                  Michael R. Barrett, Judge
                                                  United States District Court