# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Mark Miller, *et al.*,

    Plaintiffs

-vs-

City of Cincinnati, *et al.*,

    Defendants

Case No. 1:08cv550

Judge Michael R. Barrett

## ORDER

This matter is before the Court upon Defendants' Motion to Dismiss. (Doc. 87) Plaintiffs have filed a Response in Opposition (Doc. 100), and Defendants filed a Reply (Doc. 111).

Also before the Court is Defendants' Motion for Partial Judgment on the Pleadings (Doc. 98). Plaintiffs have filed a Response in Opposition. (Doc. 115.) However, at a discovery hearing held on February 24, 2012, the Court informed Plaintiffs that the City Council Chambers and Committee Rooms A&B were not part of the pending lawsuit and not subject to discovery. Therefore, Defendants' Motion for Partial Judgment on the Pleadings (Doc. 98) is denied as moot.

## I. BACKGROUND

The case was originally was filed on August 15, 2008. (Doc. 1.) Plaintiffs Mark Miller, Coalition Opposed to Additional Spending & Taxes ("COAST") and WeDemandAVote.com claimed Defendants' unconstitutional policy, practice and custom prohibited Plaintiffs from holding a press conference and political rally in the lobby and

1

stairs inside City Hall. In ruling upon Plaintiffs' Motion for Preliminary Injunction, this Court found that Plaintiffs had shown a likelihood of success on the merits of their claims that the City's Administrative Regulation # 5 violates Plaintiffs' First Amendment, Equal Protection, and Due Process rights. On appeal, the Sixth Circuit affirmed this Court's decision that the City's regulation violates the plaintiffs' right to free speech and that it is unconstitutionally vague. *Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010).

Defendants now argue that COAST and WeDemandAVote.com do not have standing to bring any of its claims because they are "fictional plaintiffs." Defendants do not direct the same challenge to the claims brought by Plaintiff Mark Miller. However, Defendants challenge the standing of all Plaintiffs to seek injunctive relief.

II. **ANALYSIS**

    A. **Motion to Dismiss Standard**

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims and therefore the claims should be dismissed pursuant to Federal Rule 12(b)(1) and 12(h)(3). Defendants argue that the Court should apply the heightened pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) in deciding their motion. However, the issue before the Supreme Court in *Ashcroft v. Iqbal* was the proper standard for deciding a Rule 12(b)(6) motion, not a motion for lack of subject matter jurisdiction under Rule 12(b)(1) or 12(h)(3). Defendants cite to an unpublished decision from the Northern District of Ohio to support their position that the heightened pleading standard applies when determining whether a plaintiff has standing to bring a claim. *Scrap Yard, LLC v. City of Cleveland*, 2011 WL 3900574, *9 (N.D.Ohio June 23, 2011). While the district court did

apply *Iqbal* in that case,[1] the question of statutory standing is often confused with the question of constitutional and prudential standing. *See Roberts v. Hamer*, 655 F.3d 578, 580-81 (6th Cir. 2011). As the Sixth Circuit has explained, statutory standing is the question of:

> "whether this plaintiff has a cause of action under the statute." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n. 2, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The question is closely related to the merits inquiry (oftentimes overlapping it) and is analytically distinct from the question whether a federal court has subject-matter jurisdiction to decide the merits of a case. *See id.*; *Davis [v. Passman]*, 442 U.S. at 239 n. 18, 99 S.Ct. 2264 (distinguishing the concepts of Article III standing and cause of action and noting that "[w]hether petitioner has asserted a cause of action . . . depends not on the quality or extent of her injury," as does the inquiry under Article III standing, "but on whether the class of litigants of which petitioner is a member may use the courts to enforce the right at issue").

*Id*. Accordingly, "[w]here a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction." *Id.* at 581 (citing Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ., 615 F.3d 622, 626 (6th Cir. 2010)).

Here, Defendants ostensibly argue that COAST and WeDemandAVote.com are unable to bring claims because they lack associational standing. Resolving the issue of associational standing does include an analysis of the requirements of Article III. *See United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555 (1996). Accordingly, a motion based on lack of associational standing would be decided on a motion to dismiss for lack of subject-matter jurisdiction. *See Coal Operators*

---

[1]The specific issue in the case was whether two of the plaintiffs, as shareholders of the company allegedly harmed, could bring claims under 42 U.S.C. § 1983. 2011 WL 3900574, at *9.

*and Associates, Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) (noting that while the district court elected to dismiss non-profit corporation's claims based upon the failure to state a claim, "it need not have reached this substantive question because plaintiffs failed to establish that they have standing to sue, which is a jurisdictional requirement.").[2]

However, what Defendants are truly arguing is that COAST and WeDemandAVote.com lack the capacity to sue. Capacity and standing are two distinct legal questions. *Tri-Med Finance Co. v. National Century Financial Enterprises, Inc.*, 2000 WL 282445, *4 (6th Cir. Mar. 6, 2000). Because capacity to sue is not jurisdictional, it should not be analyzed as part of a motion to dismiss for lack of jurisdiction. *See Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43 n.1 (6th Cir. 1994) (explaining that Rule 17(a) is not jurisdictional and relates only to the proper parties and the capacity to sue); *Srock v. U.S.*, 2006 WL 2460769, 4 n.6 (E.D.Mich. Aug. 23, 2006) (rejecting attempt to classify motion challenging capacity to sue as one brought under Federal Rule 12(b)(1)).

Finally, Defendants argue that all Plaintiffs lack the standing to seek injunctive relief under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), which requires a plaintiff to demonstrate that he or she faces a real and immediate threat of the same injury in the future. This question of standing is jurisdictional, and is therefore decided as part of a motion to dismiss for lack of jurisdiction.

For the sake of completeness, the Court will address all three arguments and apply

---

[2] Of course, the issue of a party's standing may also be raised by a motion for summary judgment. *See* 15 James Wm. Moore et al., Moore's Federal Practice § 101.30[1] (3d ed. 2010).

4

the proper standard of review, which are as follows:

In reviewing a motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949-50. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (quoting Twombly, 550 U.S. at 556).

Challenges to subject-matter jurisdiction under 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co., 491 F.3d 320, 330 (6th Cir. 2007)). "Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion." *Id.* Therefore, for a complaint to allege jurisdiction adequately, "it must contain non-conclusory facts which, if true, establish that the district court had jurisdiction over the dispute." *Id.* (citing O'Bryan v. Holy See, 556

F.3d 361, 375-76 (6th Cir.), cert. denied, 130 S.Ct. 361 (2009)). However, under a factual attack, a court "can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.* (citing RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996)).

### B. Associational standing

The Court notes that the Sixth Circuit has already found that COAST and WeDemandAVote.com have standing to sue in their own right because it found that these Plaintiffs have suffered an injury-in-fact. *Miller v. City of Cincinnati*, 622 F.3d at 531-32 (concluding that "the plaintiffs suffered an injury when the City denied their request for access and told them to find a sponsor."). The law of the case doctrine precludes reconsideration of an issue already decided in a previous stage of litigation, either explicitly or by necessary inference from the disposition. *McKenzie v. BellSouth Telecomms*., 219 F.3d 508, 513 (6th Cir. 2000) (citing United States v. Moored, 38 F.3d 1419, 1421-22 (6th Cir. 1994)). However, a ruling can be reconsidered: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice. *Id.* at 513 n. 3 (citing Hanover Ins. Co. v. American Eng'g Co., 105 F.3d 306, 312 (6th Cir. 1997)).

Defendants have not cited any basis for the Court to reconsider the Sixth Circuit's conclusion that COAST and WeDemandAVote.com have standing to sue in their own right. The record before this Court shows that the July 17, 2008 request to hold an event on the inner steps and first floor lobby of City Hall was made on behalf of Mark Miller "and the

6

organizations of which I am a part (WeDemandAVote.Com and COAST)." (Doc. 1-6.) Therefore, under the law of the case, WeDemandAVote.Com and COAST do not need to establish associational standing. Accordingly, Defendants' Motion to Dismiss is denied on this basis.

### C. Standing to seek injunctive relief

Defendants rely on *City of Los Angeles v. Lyons* to argue that Plaintiffs lack standing to seek injunctive relief. In *Lyons*, the plaintiff claimed that police officers put him in an illegal choke hold during a traffic stop. 461 U.S. at 105. The plaintiff sought monetary damages as well as prospective relief. *Id.* The United States Supreme Court concluded that while the plaintiff may have standing for his damages claim, he did not have standing to pursue his injunctive relief because his prior encounter with the police "does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* Therefore, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Id.* at 103.

The Court finds that based on the record before it, Defendants' reliance on *Lyons* is misplaced. While Administrative Regulation #5 was amended after the filing of this case, there have been no additional changes to the regulation itself. Therefore, the Administrative Regulation #5 which was reviewed on appeal by the Sixth Circuit still remains in place today.

However, Defendants appear to argue that they have changed the sponsorship

requirement which the Sixth Circuit found objectionable.[3]  Defendants explain that they have withdrawn the stipulations they entered into with Plaintiffs, which included a stipulation that "both versions of Administrative Regulation #5 require political or administrative collaboration with an authorized official and that the authorized officials have full and independent discretion to sponsor private groups and individuals, giving them access to the interior of city hall."  *Id.* at 532-33.  Defendants describe their new practice for controlling the use of the interior space of City Hall as creating "a viewpoint-neutral nonpublic forum reserved for City official uses."  (Doc. 112, at 5.)  However, the details of the new practice are not clear.  Defendants quote from the deposition testimony of Milton Dohoney, the City Manager, and make a general reference to the depositions of other city officials to support their position that "each City official testifying in this matter described the City's longstanding practice of reserving use of the interior of City Hall to City officials for purposes consistent with their official public rights and duties."  (Doc. 112, at 8.)  The Court finds that this evidence is inadequate to overturn the law of this case.  The deposition testimony says nothing about changing the sponsorship requirement or how access to the interior of City Hall is granted.  Therefore, the case and controversy that the Sixth Circuit found to exist in 2010 still exists today.  Accordingly, Defendants' Motion to Dismiss is denied on this basis.

### D. <u>Capacity to sue</u>

The capacity to sue or be sued is governed by Federal Rule of Civil Procedure

---

[3] The Sixth Circuit concluded that the City's sponsorship requirement "placed the plaintiffs' request at the mercy of the unfettered discretion of those officials authorized to grant access."  622 F.3d at 532.

17(b), which provides that the capacity to sue or be sued is to be determined as follows:

> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
>
> (2) for a corporation, by the law under which it was organized; and
>
> (3) for all other parties, by the law of the state where the court is located, except that:
>
>> (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and
>>
>> (B) 28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

Fed. R. Civ. P. 17(b).

The parties agree that Ohio law is applicable to the issue of capacity. By statute, Ohio law provides that "[a]ny unincorporated association may contract or sue on behalf of those who are members and, in its own behalf, be sued as an entity of the name by which it is commonly known and called." Ohio Rev. Code § 1745.01.

However, Plaintiffs argue that Defendants have waived any challenge to Plaintiff's legal capacity under Federal Rule of Civil Procedure 9(a), which provides:

> (a) Capacity or Authority to Sue; Legal Existence.
>
>> (1) In General. Except when required to show that the court has jurisdiction, a pleading need not allege:
>>
>>> (A) a party's capacity to sue or be sued;
>>>
>>> (B) a party's authority to sue or be sued in a representative capacity; or
>>>
>>> (C) the legal existence of an organized association of persons that is made a party.

9

> (2) Raising Those Issues. To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

Fed.R.Civ. P. 9(a). The Sixth Circuit has explained that:

> [A]lthough an objection to a party's capacity is not an affirmative defense, it can be analogized to an affirmative defense and treated as waived if not asserted by motion or responsive pleading . . . . Early waiver is necessary to give meaning to the requirement in Rule 9(a) that capacity must be put in issue by a "specific negative averment." Moreover, an objection to capacity . . . should fall within the class of "threshold defenses"-issues that must be raised and disposed of at the outset of the suit.

*Tri-Med Finance Co. v. National Century Financial Enterprises, Inc.*, 2000 WL 282445, *5 (6th Cir. Mar. 6, 2000) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1295 at 574 (2d ed. 1990)). Accordingly, the Sixth Circuit has held that "a party who does not raise the lack-of-capacity defense before trial forfeits it after trial." *Hendricks v. Office of Clermont County Sheriff*, 326 Fed.Appx. 347, 349-350 (6th Cir. 2007).

Here, Defendants have raised the issue well before the commencement of trial. Even though this case was filed in 2008, the proceedings were stayed for a period of time during the appeals process. Moreover, Plaintiffs have not identified any prejudice as a result of having the issue of capacity raised at this stage of the proceedings. *See Lewis v. Russell*, 2012 WL 201877, *6 (E.D.Cal. Jan. 23, 2012) (finding that timing of capacity is not the sine qua non and lack of prejudice is a factor to be considered when determining if defense has been waived). Therefore, the Court will consider Defendants' argument that COAST and WeDemandAVote.com lack capacity to sue.

In the Second Amended Complaint, Plaintiffs allege that COAST "is a continuing unincorporated association of individuals organized as a political action committee under

the laws of the State of Ohio devoted to advocacy on a variety issues limiting the power and intrusiveness of government year after year." (Doc. 22, ¶ 4). COAST operates mainly by word-of-mouth. (Doc. 87-4, Thomas E. Brinkman, Jr. Dep. at 9.) However, COAST does have a website, a chairman, treasurer and a board of directors. (Id. at 9-11; Doc. 105 Thomas E. Brinkman, Jr. Aff., ¶¶ 48-52.) The board of directors selects and votes on issues undertaken by COAST. (Brinkman Dep. at 27; Brinkman Aff., ¶ 6.) COAST has adopted formal bylaws. (Brinkman Aff., ¶ 50.) In addition, COAST maintains two Ohio political action committees with a treasurer: the COAST Issues PAC and the COAST Candidates PAC. (Brinkman Aff., ¶¶ 6, 7.) Based on the foregoing, the Court finds that COAST is an unincorporated association capable of suing or being sued.

According to the Second Amended Complaint, WeDemandAVote.com "is an unincorporated association or coalition of individuals and organizations . . . involved in numerous local issues and in the course of this involvement, regularly engages in a variety of expressive activities, including petition drives, press conferences, press releases, public statements and demonstrations." (Doc. 22, ¶ 7.) COAST has been a part of WeDemandAVote.com. (Id.) However, unlike COAST, WeDemandAVote.com is an amorphous, ever-changing combination of other advocacy groups and associations, both incorporated and unincorporated. This undefined coalition has had meetings over various ballots initiatives and at some point maintained a website but has no charter, minutes or bylaws. (Doc. 104, Mark Miller Aff., ¶¶ 53-55.) WeDemandAVote.com does not have a board of directors. (Id., ¶ 66.) WeDemandAVote.com is a group of people who act together in a common cause to effect political change. (Doc. 87-2, Mark Miller Dep. at 6-7.) The activity of WeDemandAVote.com ceases when a campaign is terminated. (Id.

at 12.) Therefore, while the various participants in this political activity may well be associations capable of suing or being sued, WeDemandAVote.com is not such an association.[4]

Therefore, the City's Motion for Partial Judgment on the Pleadings (Doc. 98) is **DENIED as MOOT**; and the City's Motion to Dismiss (Doc. 87) is **GRANTED** in part and **DENIED** in part.  Accordingly, WeDemandAVote.com is **DISMISSED** from this lawsuit.

**IT IS SO ORDERED**.

                                  */s/ Michael R. Barrett*
                                  Michael R. Barrett, Judge
                                  United States District Court

---

[4] To analogize the fact pattern with sports, if politics were the Cincinnati Reds, COAST would be the "Rosie-Reds," an organization that raises money, meets regularly, has by-laws, officers, and even perhaps a mascot.  WeDemandAVote.com would be the fans who, depending on the opponent or the weather, may or may not show up at a game.