**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Mark Miller, *et al.*,

    Plaintiff,

    v.                                    Case No. 1:08cv550

City of Cincinnati, *et al.*,          Judge Michael R. Barrett

    Defendants.

## OPINION & ORDER

This matter is before the Court upon Plaintiffs' Motion to Vacate Stay of Preliminary Injunction (Doc. 119); Defendants' Motion to Dismiss (Doc. 136); and Plaintiffs' Motion for Summary Judgment (Doc. 138).

**I.    BACKGROUND**

The Court will only briefly address the facts of this case here. A more complete assessment is found in this Court's previous Orders, as well at the Sixth Circuit's opinion. *See Miller v. Cincinnati*, 622 F.3d 524, 529-531 (6th Cir. 2010), *cert denied*, 131 S.Ct. 2875 (2011).

In 2008, Plaintiffs Mark Miller and COAST made two formal written requests to use the inner steps of Cincinnati's City Hall for a press conference and rally. (Docs. 22-3, 22-6.)[1] Both requests were denied by City officials. (Doc. 22-4, 22-7.)

In responding to the first request, Defendant Joel Koopman explained that the use of the interior of City Hall was governed by Administrative Regulation #5. (Doc. 22-4.) At

---

[1]The Court dismissed a third Plaintiff, WeDemandAVote.com, for lack of capacity to sue or be sued. (Doc. 118.)

the time, Administrative Regulation #5 provided:

> No private business enterprises or solicitations should be permitted in City buildings or operated therefrom. Exceptions should be made only by specific approval of the Department Head when it is judged to be in the public interest, as in the case, for example, of the United Way Campaign.
>
> No private signs or advertising materials shall be displayed on or in City buildings unless for an approved public purpose authorized by the Department Head.
>
> . . .
>
> In making any exceptions to the above policies, Department Heads are urged to consider not only what is proper, but also how it appears to the public.

(Id.) Koopman explained that the intent of Administrative Regulation #5 is that "the use of any City facility is for conducting business related to the functions of our various departments in serving the citizens and by City Council in the performance of their duties." (Id.) Koopman also explained that: "City Facility Management's practice is that events held inside the building require a City sponsor, either a Council Member or a department as part of their regular business and duties." (Id.)

In responding to the second request, Koopman explained that "[e]vents that do not have sponsorship from a City Department, the City Manager, a Council Member or the Mayor are welcome to use the exterior stairs since it is a public plaza. . . . If you should acquire sponsorship from one of the above parties, please inform us so arrangements can be made for use of the interior steps." (Doc. 22-7.)

On August 15, 2008, Plaintiffs filed their original complaint and sought injunctive relief. (Docs. 1, 2.) On August 19, 2008, this Court entered a Temporary Restraining Order which enjoined Defendants from applying Administrative Regulation #5 to requests

for use of the lobby and stairs inside City Hall.  (Doc. 8)  The Court ordered further that no sponsored or unsponsored activities shall take place in the lobby and stairs inside City Hall except for routine ingress and egress during the pendency of the Temporary Restraining Order.  (Id.)

Following the entry of this Court's TRO, the City amended Administrative Regulation #5.  The second version provided:

> City Hall is lawfully dedicated for the purpose of allowing City officials to exercise the rights and responsibilities specified in the Charter of the City of Cincinnati. . . .
>
> The interior spaces of City Hall are reserved for use by the Mayor, City Manager and his assistants, City Councilmembers, City Department Directors, City Commissions and Boards, and City employees.  The interior of City Hall is open to the public for purposes of visiting City offices and attending City Council and other public meetings.  The interior of City Hall is not generally available to the public for other purposes.
>
> When the Mayor, City Manager and his assistants, City Councilmembers, City Department Directors, City Commissions and Boards intend to use interior spaces of City Hall for assemblages, they should notify the Facilities Management Division of the Public Service Department. . . .
>
> Facilities Management is responsible for insuring that the assemblage does not create security problems, unreasonably interfere with ingress or egress from City Hall, or otherwise unreasonably interfere with the other official uses occurring inside City Hall.
.
(Doc. 22-8.)

As part of the proceedings on Plaintiffs' Motion for Preliminary Injunction, the parties entered into "Joint Stipulations of Fact."  (Docs. 28, 29, 30.)  The following stipulations applied to the first and second Administrative Regulation #5:

> 14. Pursuant to both the City Facility Management's practice under Old Administrative Regulation #5 and New Administrative Regulation #5, the person who sponsored the use (under Old Administration Regulation #5) and the "use[r] [of] interior spaces of City Hall for

        assemblages" (under New Administrative Regulation #5) did not necessarily need to attend the use and/or participate in the use in order for it to proceed.

. . .

17. Pursuant to all of (i) the City Facility Management's practice under Old Administrative Regulation #5, (ii) the Rules of Council and (iii) New Administrative Regulation #5, the person who could sponsor a use inside of City Hall (as set forth in Stipulation #3, above), the persons authorized to reserve Council Chambers and the third floor community room (as set forth in Stipulation # 4, above), and persons who could "use interior spaces of City Hall for assemblages" (as set forth in Stipulation # 14, above), were or are able to use his or her full and independent discretion (except as provided below) in determining whether to sponsor such use or use such space for an assemblage, including sponsoring a use of such space for an assemblage at which private individuals or groups could appear, speak, hold signs or engage in other communicative activities.

> **The parties DO NOT agree on the following alternate additional language. It is included for purposes of showing their area of disagreement.**

    A.    With respect to the foregoing, the City maintains that the exercise of such discretion was and is constrained,(i) as to Old Administrative Regulation #5, as stated in Mr. Koopman's letter dated April 29, 2008, that Cincinnati City Hall (as one of may City Facilities) was to be used "for conducting business related to the functions of [the City's] various departments in serving the citizens and by City Council in the performance of their duties" and (ii) as to New Administrative Regulation #5, is to be used only for "allowing City officials to exercise the rights and responsibilities specified in the Charter of the City of Cincinnati."

    B.    With respect to the foregoing, Plaintiffs maintain that there was and is no constraint on the exercise of such discretion per the language of Old Administrative Regulation #5, as well as in actual practice.

18. Under the City Facility Management's practice under Old Administrative Regulation #5 and under New Administrative Regulation #5, in order for private individuals to participate in a rally and press conference inside of City Hall, such individuals would need

>   to politically or administratively collaborate with the Mayor, a member of the Cincinnati City Council, the City Manager and his assistants, a City Department Director, or a City Board or Commission. The City's policy allows full and independent discretion to each of the aforementioned individuals in determining whether or not to politically or administratively collaborate with private individuals. Because of the requirement for political or administrative collaboration with City officials, it was and remains possible that private advocates of one position, e.g., the "Yes" position, on a ballot issue, could participate in a rally or press conference inside City Hall, and advocates of the opposite viewpoint, e.g., the "No" position on the same ballot issue, could not participate in a similar rally or press conference inside City Hall unless those advocating such opposite viewpoint could also politically or administratively collaborate with one of the aforementioned individuals.

(Doc. 28, at 8-9.)

This Court granted Plaintiffs' Motion for Preliminary Injunction (Doc. 43), but stayed the injunction pending the appeal of that Order (Doc. 54). In granting injunctive relief, this Court found that the inner front lobby and first floor staircase on the Plum Street side of City Hall, various conference rooms, and the basement lunchroom in City Hall are limited or designated public fora. This Court concluded that Plaintiffs had established a likelihood of success on their facial First Amendment challenge because the sponsorship requirement was not reasonably related to the purpose of the forum. The Court also found that Plaintiffs had established a likelihood of success on their constitutional right of association claim and equal protection claim. Finally, the Court found that Plaintiffs had established a likelihood of success on their claim that Administrative Regulation #5 was void for vagueness.

At the same time, this Court also denied Defendants' Motion to Dismiss, which argued that Plaintiffs' claims should be dismissed because (1) Plaintiffs lacked standing; (2) Plaintiffs' claims were not ripe; and (3) Plaintiffs' claims were moot because

Administrative Regulation #5 had been amended. First, the Court found that Plaintiffs did have standing to bring their claims even though they had never sought a City sponsor for their press conference and rally. The Court noted that Plaintiffs were bringing a facial challenge, and the Supreme Court had held that "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755-756 (1988).

Next, this Court found that Plaintiffs' claims were ripe because they had shown that it was likely that the alleged injury would occur because City officials had denied the previous two requests to use the interior of City Hall.

Finally, this Court found that the amendment of Administrative Regulation #5 had no effect because the parties stipulated that the second Administrative Regulation #5 also required independent individuals and groups to find a sponsor to hold an event inside City Hall. In addition, the Court noted that nominal damages for past wrongs were an available remedy.

Defendants appealed this Court's rulings. On appeal, the Sixth Circuit found that Plaintiffs did have standing to sue, the challenge to the sponsorship requirement was ripe for review, and Plaintiffs' claims were not moot to the extent that they were seeking nominal damages. The Sixth Circuit also affirmed this Court's conclusion that Plaintiffs showed a likelihood of success on the merits on their facial First Amendment challenge to

the sponsorship requirement and the void-for-vagueness claim.[2] The Sixth Circuit remanded the case for further proceedings.

Following remand, the parties withdrew the Joint Stipulations of Fact (Doc 74), and engaged in discovery. On June 25, 2012, the City amended Administrative Regulation #5 a third time. This version is currently in place and reads:

> The interior of City Hall includes non-common spaces and common areas. The non-common interior spaces of City Hall, including office spaces and meeting rooms, are reserved for use by the Mayor, City Manager and Assistant City Managers, Councilmembers, and City department directors (together, "City Officials") for activities related to their on-going duties and responsibilities as public officials or public employees or for other government purposes associated with the City's role as an employer ("Government Purpose").
>
> When City Officials intend to use a meeting room consistent with a Government Purpose, they shall request the use of such meeting from the Facilities Management Division of the Public Services Department, unless the request is for the use of the council chambers of council committee rooms in which case the request shall be directed to the clerk of council. The request should be provided as far in advance of the intended use as reasonably practicable an shall state the Government Purpose. The City Official must be present and in control of the meeting room at all times. . . .
>
> The interior common areas of City Hall, including the hallways and stairways, are open to the public for purposes of visiting City Officials and attending public meetings.
>
> Because of the disruption created by crowds and noise, the interior of City Hall is not a public forum and shall not be used by members of the public to hold rallies, press conferences, or other public events. No City Official may use their access to the interior of City Hall to sponsor or otherwise allow members of the public to hold rallies, press conferences, or other public events.

(Doc. 136-1.) Defendants seek to dismiss Plaintiffs' claims based on this third

---

[2]The Sixth Circuit found that this Court erred in concluding that Plaintiffs had shown a likelihood of success on the merits on their First Amendment expressive association claim and their equal protection claim.

Administrative Regulation #5, arguing that Plaintiffs' claims for declaratory and injunctive relief are moot. Defendants also argue that Plaintiffs do not have standing to bring their claim for nominal damages because they are unable to identify an "injury in fact."

Plaintiffs maintain that despite the changes made in the third Administrative Regulation #5, they have standing to bring their claims, and their claims are not moot because the previous versions of Administrative Regulation #5 were unconstitutional. In their motion, Plaintiffs argue that they are entitled to summary judgment on their claims. Plaintiffs seek an award of nominal damages in a specific amount determined by the Court; and an order directing the City of Cincinnati to allow the Plaintiffs to hold a rally or press conference in the interior of City Hall.

## II.  ANALYSIS

### A.  Standards of Review

#### 1.  Motion to Dismiss

A motion to dismiss for lack of standing is properly analyzed under Federal Rule 12(b)(1) because a plaintiff's lack of standing is said to deprive a court of jurisdiction. *Susan B. Anthony List v. Driehaus*, 805 F. Supp. 2d 412, 419 (S.D. Ohio 2011) (citing Ward v. Alt. Health Delivery Sys., 261 F.3d 624, 626 (6th Cir. 2001)). A motion to dismiss based on mootness also questions a court's jurisdiction because "'[a] federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue.'" *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir.2005) (quoting Cleveland Branch, N.A.A.C.P. v. City of Parma, 263 F.3d 513, 530 (6th Cir.2001)); *see also League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th

Cir. 2008) (explaining that mootness implicates Article III's "case or controversy" requirement and is a jurisdictional requirement).

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.2004).

### 2. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a), as amended on December 1, 2010, provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party.  *Id*. at 252.

### B. Standing

Defendants argue that Plaintiffs do not have standing because until they filed their Motion to Vacate Stay of Preliminary Injunction on July 10, 2012, Plaintiffs had not made

another request to hold a press conference or rally inside City Hall.[3]

However, on appeal, the Sixth Circuit found that Plaintiffs had standing to sue even though they had never sought to secure a sponsor for their event. The Sixth Circuit explained:

> When the City instructed the plaintiffs to secure a sponsor, the City placed the plaintiffs' request at the mercy of the unfettered discretion of those officials authorized to grant access. But, as the district court observed, the Supreme Court has held that "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). Because unfettered governmental discretion over the licensing of free expression "constitutes a prior restraint and may result in censorship," a plaintiff may bring facial challenges to statutes granting such discretion "even if the discretion and power are never actually abused." *Id.* at 757, 108 S.Ct. 2138.
>
> In our view, both the original and revised versions of Administrative Regulation # 5 afford authorized officials precisely this kind of unfettered discretion in deciding whether to sponsor an event in the interior of city hall. . . . when a plaintiff's protected-speech activities are subject to restriction at the government's unfettered discretion, the plaintiff has suffered an injury in fact. We thus conclude that in this case the plaintiffs have standing to sue.

622 F.3d at 532. There is nothing in the record which would change this conclusion. Therefore, the Court finds that Plaintiffs have standing to bring their claims to the extent that they are bringing facial challenges.[4]

---

[3]Plaintiffs respond to this argument, in part, by citing to this Court's ruling on the issue of associational standing for WeDemandAVote.com and COAST. (See Doc. 118.) The Court does not read Defendants' arguments with regards to standing as making any reference to associational standing.

[4]Plaintiffs have made references in their arguments to claims based on the application of Administrative Regulation #5 to them. The Court has never interpreted Plaintiffs' claims as being "as applied" claims because Plaintiffs never sought out and failed to secure a sponsorship.

**C.** **Mootness**

"While standing restricts a party's capacity to bring a lawsuit at the time the complaint is filed, mootness restricts a party's capacity to bring a lawsuit throughout the course of the litigation." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 460 (6th Cir. 2007) (citing United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396-97 (1980)).  The passage of a new law or an amendment to the original law may moot the case.  *Id.* (citing Hall v. Beals, 396 U.S. 45, 48 (1969)).

Defendants argue that Plaintiffs' claims for declaratory and injunctive relief are moot because the third Administrative Regulation #5 no longer requires a sponsor.  The Court agrees.  While Plaintiffs' claims for nominal damages remain, Plaintiffs' claim for declaratory or injunctive relief have been rendered moot by the changes made in the third Administrative Regulation #5.  Not only is the sponsorship requirement removed, but it specifically prohibits *any* press conference or rally inside City Hall:

> Because of the disruption created by crowds and noise, the interior of City Hall is not a public forum and shall not be used by members of the public to hold rallies, press conferences, or other public events.  No City Official may use their access to the interior of City Hall to sponsor or otherwise allow members of the public to hold rallies, press conferences, or other public events.

(Doc. 136-1.)

However, Plaintiffs argue that their claims are not moot because there is no guarantee that the City Manager will not revert back to the earlier versions of Administrative Regulation #5 once this litigation has ended.

"A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528

U.S. 167, 174 (2000). However, where there is no evidence in the record that a city has announced any intention of, or made any threat to, reenact an ordinance, injunctive and declaratory relief are mooted. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012) (citing Kentucky Right to Life, Inc. v. Terry, 108 F.3d 637 (6th Cir.1997) and Brandywine, Inc. v. City of Richmond, Kentucky, 359 F.3d 830 (6th Cir. 2004)). Moreover, the Sixth Circuit has noted that the "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties" and that "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Id.* (quoting Mosley v. Hairston, 920 F.2d 409, 415 (6th Cir. 1990)).

Here, the City has not announced any intention of, or made any threat to, reinstate the sponsorship requirement. Not only has the City eliminated the sponsorship requirement from Administrative Regulation #5, but it has closed the interior of City Hall to all rallies, press conferences, or other public events.[5] Therefore, the Court concludes that Plaintiffs' claims for declaratory or injunctive relief have been rendered moot.[6] Accordingly,

---

[5]The Court notes that even though the second Administrative Regulation #5 did not carve out any areas of the interior of City Hall, after the second Administrative Regulation #5 was put into place, the City Manager closed the interior lobby and stairs of City Hall to any assemblages. (Doc. 28, Ex. C.) Therefore, during the pendency of this case, Defendants have been moving, albeit slowly, in the direction of removing the sponsorship requirement.

[6]In doing so, the Court distinguishes this case from the decision in *University of Cincinnati Chapter of Young Americans for Liberty v. Williams*, 1:12-CV-155, 2012 WL 2160969 (S.D. Ohio June 12, 2012)(Black, J.). There, the defendants argued that the plaintiffs' First Amendment claim was moot because the university modified the challenged policies after the lawsuit was filed. *Id*. at *2, n.1. The defendants relied on an affidavit from the university president stating that the old policies would not be reenacted. *Id*. This Court found that the plaintiffs' claims were not moot, noting that "[t]he new policies may impose shorter notice requirements, but they still harm Plaintiffs in the same fundamental way by imposing a notice requirement for all student speech on campus." *Id*. Therefore, this Court stated that it "need


Plaintiffs' Motion to Vacate Stay of Preliminary Injunction is DENIED as MOOT.

However, as the Sixth Circuit has explained, "if the plaintiff's complaint includes a claim for damages, that claim 'preserves the plaintiff['s] backward-looking right to challenge the original law and to preserve a live case or controversy over that dispute.'" *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 581 (6th Cir. 2012) (quoting Midwest Media Prop., LLC v. Symmes Twp., 503 F.3d 456, 461 (6th Cir. 2007)); *see also Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 387 (6th Cir. 2005) (explaining that "the existence of a damages claim ensures that this dispute is a live one and one over which Article III gives us continuing authority.") (citing *Utah Animal Rights Coalition v. Salt Lake City Corp.* 371 F.3d 1248, 1257 (10th Cir. 2004) (injunctive relief could no longer redress the injury and the "capable of repetition, yet evading review" doctrine did not apply, but plaintiff's nominal damages claim saved action from mootness)).[7]  Accordingly, this Court has

---

not speculate whether the Defendants will return to the allegedly wrongful conduct because they already have in the form of the new policy." *Id*.  This rationale may have been applicable in this case after the second Administrative Regulation #5 was put into place, but because the third Administrative Regulation #5 eliminates the sponsorship requirement altogether, in this case presents a different set of facts.

[7]Defendants, citing *Morrison v. Bd of Educ. Of Boyd County*, 521 F.3d 602 (6th Cir. 2008), argue that Plaintiffs are not entitled to nominal damages.  However, the issue in *Morrison* was whether the plaintiff had standing to bring his claims.  *Id*. at 608.  The Sixth Circuit explained "absent proof of a concrete harm, where a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists." *Id*. at 609 (citations omitted).  The court then explained: "While we may have allowed a nominal-damages claim to go forward in an otherwise-moot case, see *Lynch v. Leis*, 382 F.3d 642, 646 n.2 (6th Cir. 2004); *Murray v. Bd. of Trs., Univ. Of Louisville*, 659 F.2d 77, 79 (6th Cir. 1981), we are not required to relax the basic standing requirement that the relief sought must redress an actual injury."  *Id*. at 611.  In contrast, in this case, the Sixth Circuit concluded that Plaintiffs have established standing.  *See Miller*, 622 F.3d at 532 ("when a plaintiff's protected-speech activities are subject to restriction at the government's unfettered discretion, the plaintiff has suffered an injury in fact.").  Therefore, even though Plaintiffs' case is otherwise moot, Plaintiffs' nominal-damages claim may go forward.

subject matter jurisdiction over Plaintiffs' claims for nominal damages.

Based on the foregoing, Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' claims for declaratory and injunctive relief; and DENIED as to Plaintiffs' claim for nominal damages.

### D. Free Speech

The Court now turns to the merits of Plaintiffs' free speech claim under the First Amendment.

The Court finds that other than the adoption of the third Administrative Regulation #5, there has been little change in the legal or factual landscape of this case since the Sixth Circuit issued its opinion. Defendants do not challenge the Sixth Circuit's finding that Plaintiffs' proposed press conference and rally were expressive activities protected under the First Amendment. *Id*. at 533-34 ("There is no question that the plaintiffs' proposed press conference and rally are expressive activities protected under the First Amendment."). Defendants also do not challenge the Sixth Circuit's conclusion that "Administrative Regulation #5 has created, at most, a limited public forum. . ." *Id*. at 535. Instead, Defendants contend that events held by elected City officials inside City Hall are expressions of their protected government speech.

On appeal, the Sixth Circuit addressed this argument and rejected it. The Sixth Circuit analyzed this case under the Supreme Court's decision in *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009)[8] as follows:

> Under the Court's reasoning in *Summum*, the activities that take place in Cincinnati's city hall are not "government speech." Although government

---

[8]The opinion in *Summum* was released while this case was on appeal.

> speech may involve private individuals, the connection between the events that take place inside city hall under Administrative Regulation #5 and any official government views is simply too attenuated. As we have noted, sponsoring city officials need not be involved directly in the activities that take place in city hall. Moreover, no one can reasonably interpret a private group's rally or press conference as reflecting the government's views simply because it occurs on public property. Historically, governments have exercised strong "editorial control over donated monuments," *Summum*, 129 S.Ct. at 1133, while private individuals can apparently access the interior of Cincinnati's city hall for assemblages on the whim of any authorized official.

622 F.3d at 537. Defendants have not added anything to the record which would alter the Sixth Circuit's analysis on this issue, and therefore this Court adopts the Sixth Circuit's conclusion "that the doctrine of government speech does not prevent applying First Amendment scrutiny in this case." *Id*. Therefore, Plaintiffs are entitled to summary judgment on their free speech claim under the First Amendment.

### E. Void-for-vagueness

Defendants argue that Plaintiffs are not entitled to summary judgment on their void-for-vagueness claim because the parties have withdrawn the stipulation that City officials had complete discretion to select whom they will sponsor.[9] In its place, Defendants point to the testimony of the City Manager who stated that he would use the law department to assist in the determination of whether a particular proposal to use the interior of City Hall pertained to "city business." However, the Court finds that passing the responsibility of

---

[9]The Sixth Circuit explained:

> The parties stipulate that the revised version of Administrative Regulation #5, as did the original, gives complete discretion to council members and department heads to select whom they will sponsor. The only direction provided is that the purpose of the interior of city hall is to allow City officials "to exercise the rights and responsibilities specified in the Charter of the City of Cincinnati."

*Miller*, 622 F.3d at 540

making the determination to another city department does not cure Administrative Regulation #5 of its constitutional infirmities. As the Sixth Circuit explained in this case: "A statute that fails to constrain 'an official's decision to limit speech' with 'objective criteria' is unconstitutionally vague." 622 F.3d at 539 (citing United Food & Commercial Workers Union Local 1099 v. Southwest Ohio Regional Transit. Auth., 163 F.3d 341, 358-59 (6th Cir. 1998)). What remains missing is the "objective criteria" and terms "clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion." *Id*. For example, former councilmember John Cranley explained that his understanding as to the use of the interior of City Hall was that:

> it could only be used for the public interests and that there was some protocol that you had to go through. I had people that work for me in my office, so if I wanted to use City Hall for some purpose that was in the interest of the public, I would have them figure out what the forms were, how to reserve the space, whatever.

(Doc. 124, John Cranley Depo. at 6.) Milton Dohoney, the City Manager explained that under the second Administrative Regulation #5:

> . . . a council person has their understanding of what their job is, what they're supposed to be doing. So whether or not a particular issue is relevant to the city or to them, it depends on what you're talking about. But, in general, if they believe that the issue is something that is germane to their job and they want to have a meeting about it, they have to follow a process like anyone else for the use of the space.
>
> Q:  Meaning to get it on the schedule?
>
> A:  Yes.

(Doc. 101, Milton Dohoney, Jr. Depo. at 56.) While the testimony of City officials explains their subjective belief as to what the terms in Administrative Regulation #5 meant, there is nothing in the record which shows that City officials had any meaningful guidance

concerning the use of the interior of City Hall. Therefore, Plaintiffs are entitled to summary judgment on their void-for-vagueness claim.

### III. CONCLUSION

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiffs' Motion to Vacate Stay of Preliminary Injunction (Doc. 119) is **DENIED as MOOT**:

2. Defendants' Motion to Dismiss (Doc. 136) is **GRANTED IN PART and DENIED IN PART**;

3. Plaintiffs' Motion for Summary Judgment (Doc. 138) is **GRANTED**; and

4. Plaintiffs are each awarded nominal damages in the amount of one dollar ($1.00); and

5. This matter shall be **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

          */s/ Michael R. Barrett*
          Michael R. Barrett, Judge
          United States District Court